UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CANTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. FOODS, INC.,<br><br>　　　　Defendant. | Case No.  22-cv-04226-TLT   (LJC)<br><br>**ORDER RE: PARTIES' JOINT STATEMENT OF DISCOVERY DISPUTE**<br><br>Re: ECF No. 35 |

This case involves employment discrimination, retaliation, and constructive discharge claims.  Before the Court is the parties' Joint Statement of Discovery Dispute Regarding Defendant U.S. Foods, Inc.'s (US Foods) Subpoenas for Plaintiff Brian Canton's Medical Records (Joint Discovery Statement).  ECF No. 35.  The Court construes the parties' discovery dispute as a motion by Plaintiff Mr. Canton to quash US Food's subpoenas under Federal Rule of Civil Procedure 45(d)(3)(A).  Having read the parties' submissions and carefully considered their arguments and the relevant legal authority, including that presented at the Court's hearing on the dispute, for the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Canton's motion to quash.  The Court finds that US Foods is entitled to all medical records from Mr. Canton's therapist, Damien Terronez, LCSW, People Assisting the Homeless (PATH) (an entity affiliated with Mr. Terronez), and Mr. Canton's podiatrist, Jack Harvey, DPM.  However, US Foods' subpoena for medical records to Mr. Canton's general practitioner, Michael Alper, M.D. is overbroad and must be narrowly tailored to seek only the relevant, non-protected information at issue in this case.

**I.     BACKGROUND**

　　　Mr. Canton brings this lawsuit against US Foods based on claims related to race-based

employment discrimination, retaliation, and constructive discharge under 42 U.S.C. § 1981 and the California Fair Employment and Housing Act (FEHA). First Amended Complaint (FAC) ¶¶ 6-7, ECF No. 21. Mr. Canton is a Black man who was employed with US Foods in Livermore, California for 18 years. Id. ¶ 2. Mr. Canton alleges that, during his tenure at US Foods, the company had a pattern and practice of promoting less qualified White employees over its Black employees. Id. Mr. Canton states that he complained to upper management and human resources on numerous occasions, but US Foods failed to act, and instead, retaliated against him by not selecting him for a warehouse manager position. Id. ¶ 3. Mr. Canton further alleges that he was constructively terminated on April 20, 2022. Id. ¶ 5.

Mr. Canton's First Amended Complaint alleges that US Food's conduct caused him emotional distress, for which he is seeking damages. Id. ¶¶ 4, 57, 75, 84, 93. Mr. Canton went on stress-related disability leave from December 20, 2021, until May 1, 2022, which he alleges was due to stress caused by US Food's discriminatory treatment against him. Id. ¶ 51. According to Mr. Canton, he suffered from depression, anxiety, sense of worthlessness, and helplessness. Id. ¶ 57. Mr. Canton is also seeking economic damages and lost wages because of the allegedly wrongful termination. Id.

On March 10, 2023, US Foods served subpoenas seeking medical records from Mr. Canton's care providers: Mr. Terronez, Dr. Harvey, and Dr. Alper. ECF No. 35-1 at 2-22.[1] US Foods' subpoenas requested all medical records and documents pertaining to Mr. Canton's treatment or consultation, including his entire medical chart and file(s), during the period from January 1, 2018, to the present. Id. Mr. Canton's counsel sent an email to US Foods objecting to the scope of the subpoenas on March 14, 2023. ECF No. 40-1 at 50. The parties met and conferred, and thereafter, US Foods served an amended subpoena to Mr. Terronez and PATH on March 16, 2023, narrowing the temporal scope of the subpoena from January 1, 2019, to the present. ECF No. 35-1 at 24-32.

Despite continued negotiations, the parties did not come to a resolution, and Mr. Canton's

---

[1] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system when the document is electronically filed on the court docket.

counsel sent notice of objections to his medical providers on March 17, 2023, instructing them to withhold the records until a court resolved the dispute. Id. at 82-83. US Foods sent its own letters to the medical providers on March 23, 2023, informing them that "should [they] refuse to produce documents pursuant to the subpoena, we will pursue any and all legal remedies available to us." Id. at 34-35.

The parties filed their Joint Discovery Statement on March 24, 2023, where Mr. Canton's counsel indicated that he intended to file a motion to quash US Foods' subpoenas. ECF No. 35. In the meantime, on March 27, 2023, the Court granted the parties' stipulated protective order in the case. ECF No. 36.

On April 13, 2023, the Court issued an order directing the parties to submit supplemental briefing regarding the nature and type of medical records maintained by each of the care providers, and whether Mr. Canton had waived his privacy rights as to his medical records by putting their contents "at issue" in the case. ECF No. 39. Both Mr. Canton and US Foods submitted their supplemental briefs on April 20, 2023. ECF Nos. 40, 41. Both parties also indicated in their briefing that US Foods has already received all records from all three medical providers, except for an intake form dated January 15, 2022, related to Mr. Terronez's treatment of Mr. Canton, which Mr. Canton had previously produced to US Foods with redactions.[2] ECF Nos. 40 at 2; 41 at 1. The Court held a hearing on April 25, 2023. ECF No. 42. Per the Court's instructions, Mr. Canton's counsel lodged an unredacted copy of the intake form for *in camera* review. See id.

II.   **LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering, among other things, "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). However, the Court must modify or quash a subpoena seeking production of documents which "requires disclosure of privileged or other protected matter, *if no exception or waiver applies*." Fed. R. Civ. P. 45(d)(3)(A)(iii) (emphasis added).

---

[2] US Foods' counsel informed the Court that, as of the hearing date, they had not yet received any documents from PATH in response to the subpoena.

3

1     Although a party generally has privacy rights as to their own medical records, those rights may be waived "if the party puts their contents at issue in a case." Anderson v. Clawson, No. C 13-0307 LHK (PR), 2014 WL 3725856, at *2 (N.D. Cal. July 25, 2014); see also E.E.O.C. v. Serramonte, 237 F.R.D. 220, 224 (N.D. Cal. 2006) ("The test of whether [one party] should obtain access to [another party's] medical records is not relevance—the records may be highly relevant—but the test is whether the privilege has been waived by putting the privileged information at issue.") (internal quotation marks and citation omitted). However, any waiver is "limited to the private information that is relevant to the lawsuit." Anderson, 2014 WL 3725856, at *2 (quoting Enwere v. Terman Assocs., L.P., No. C 07-1239 JF PVT, 2008 WL 5146617, at *2 (N.D. Cal. Dec. 4, 2008)).

A party does not waive their right of privacy as to medical records "by asserting… a garden-variety claim of emotional distress." E.E.O.C., 237 F.R.D. at 224. But there is undoubtedly a waiver if the party brings claims concerning physical or mental health injuries and then seeks damages for those injuries. Ali v. eBay, Inc., No. 17CV06589BLFSVK, 2018 WL 3368389, at *1 (N.D. Cal. July 10, 2018). "In deciding whether to quash the subpoena, the Court must balance the need for the particular information against the privacy right asserted." Knoll, Inc. v. Moderno, Inc., No. C 12-80193-MISC SI, 2012 WL 4466543, at *2 (N.D. Cal. Sept. 26, 2012).

### III. DISCUSSION

Mr. Canton argues that he has not waived his privacy rights as to all medical records sought by US Foods because he has only put his emotional distress and mental health at issue in the lawsuit, and no other health condition. ECF No. 40 at 2-3. Therefore, any records not related to his emotional distress or mental health are irrelevant and the subpoenas are necessarily overbroad. Id. In addition to arguing that the medical records it seeks are relevant and Mr. Canton has waived his privacy rights, US Foods argues that his motion to quash is untimely and also moot. ECF No. 41 at 2-4.

#### A. Timeliness of Motion to Quash

US Foods argues that Mr. Canton's motion to quash is "untimely because the dates of

compliance for US Foods' subpoenas have already passed." ECF No. 41 at 2. US Foods' original subpoenas to all three of Mr. Canton's medical providers were served on March 10, 2023, and they required compliance by March 24, 2023. ECF No. 35-1 at 2-22. US Foods' amended subpoenas to Mr. Terronez and PATH were served on March 16, 2023 and required compliance by March 30, 2023. Id. at 24-32.

Rule 45(d)(3)(A) requires that a subpoena be modified or quashed on certain grounds where a "timely motion" is filed. The Rule does not define what is considered a "timely motion." US Foods notes that many courts in this Circuit have read Rule 45(d)(3)(A) to mean a motion is "timely" if filed before the compliance date designated in the subpoena. ECF No. 41 at 2; see also In re DMCA § 512(h) Subpoena to Twitter, Inc., 608 F. Supp. 3d 868, 875, n.2 (N.D. Cal. 2022); Freed v. Home Depot U.S.A., Inc., No. 18CV359-BAS (LL), 2019 WL 183833, at *4 (S.D. Cal. Jan. 14, 2019).

US Foods claims that the Joint Discovery Statement was filed on April 13, 2023. ECF No. 41 at 2. This is not true. The parties' Joint Discovery Statement was filed on March 24, 2023, the same day compliance with the original subpoenas was required. ECF No. 35. More importantly, what US Foods fails to acknowledge is that Mr. Canton's counsel sent an email to US Foods objecting to the scope of the subpoenas on March 14, 2023, four days after they were served on Mr. Canton's medical providers. ECF No. 40-1 at 50. The parties met and conferred regarding the subpoenas that same day. ECF No. 35 at 2. They continued to exchange emails, and US Foods served amended subpoenas as to Mr. Terronez and PATH narrowing the subpoenas' temporal scope on March 16, 2023. Id. The next day, March 17, 2023, Mr. Canton's counsel sent Notices of Objections to the subpoenas to Mr. Canton's medical providers, and US Foods responded with its own letters to the medical providers on March 23, 2023. Id.[3] The following day, March 24, 2023, Mr. Canton submitted the dispute over the subpoenas in the parties' Joint

---

[3] In the Joint Discovery Statement, US Foods argues that the Notices of Objection were "procedurally improper because only the non-party witness who is served with a subpoena may serve the subpoenaing party or attorney with a written objection." ECF No. 35 at 6 (citing Fed. R. Civ. P. 45(d)(2)(B)). However, "it is immaterial that [Plaintiff] has no standing to object as the non-recipient of the subpoenas, since it has standing as Plaintiff to file a motion to quash on all the same grounds." E.E.O.C., 237 F.R.D. at 223.

Discovery Statement for resolution by the Court.  ECF No. 35.

Therefore, Mr. Canton acted timely in sending a written objection to the subpoenas and bringing the matter to the Court for resolution "within a reasonable time after the conclusion of informal efforts to resolve the objections."  In re DMCA § 512(h) Subpoena to Twitter, Inc., 608 F. Supp. 3d at 875, n.2; see also Friedman v. Old Republic Home Prot. Co., Inc., No. SACV121833AGOPX, 2014 WL 12845131, at *2 (C.D. Cal. June 24, 2014) ("It is not appropriate…to rob [a party] of the opportunity to move to quash the subpoena because its good faith efforts to resolve the matter outside of Court made its request untimely under some decisions interpreting Rule 45.")

To the extent US Foods' position is that Mr. Canton's request to the Court to quash the subpoenas is not timely because there was no "formal" noticed motion to quash filed, it is mistaken.  The Court is well within its discretion to construe and proceed with Mr. Canton's objections in the Joint Discovery Statement to US Foods' subpoenas as a motion to quash under Rule 45(d)(3)(A).  See Anderson, 2014 WL 3725856, at *2 (construing plaintiff's objections to defendants' subpoenas filed with the Court as a motion to quash under Rule 45).

**B.     Mootness of Motion to Quash**

US Foods alternatively argues that Mr. Canton's motion to quash is moot because it has already received all records from Mr. Canton's medical providers, except for an intake form completed by Mr. Canton for his treatment by Mr. Terronez, dated January 15, 2022, which was produced to US Foods with three lines redacted by Mr. Canton's counsel.  ECF No. 41 at 2.  Mr. Canton argues that he "maintains constitutional privacy rights and statutory privileges that he has not waived" even though the records were produced.  ECF No. 40 at 2.  In addition, he argues that "because the records were produced improperly, the Court's involvement here is of utmost importance." Id.

US Foods cites to New Sensations, Inc. v. Does 1-1745, No. C 10-05863 WHA, 2011 WL 2837610 (N.D. Cal. July 18, 2011) and Ocean Garden Prod., Inc. v. Blessings, Inc., No. 820MC00006JVSKESX, 2020 WL 1650033 (C.D. Cal. Apr. 3, 2020), where motions to quash subpoenas were denied as moot.  However, in both cases, the motions were summarily denied

6

without substantive analysis. See New Sensations, 2011 WL 2837610 at *1; Ocean Garden Prod., Inc., 2020 WL 1650033 at *1.

More importantly, Rule 45(e)(2)(B) provides the proper procedure for instances where information subject to a claim of privilege is produced:

> If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

See also Vincent v. City of California City, No. 1:18-CV-00549- JLT, 2019 WL 1585202, at *4 (E.D. Cal. Apr. 12, 2019) (ruling on a motion to quash subpoenas served by the defendant to the plaintiff's previous employers for documents related to job performance and workplace conduct despite records having been previously produced, based on Rule 45(e)(2)(B)).

Here, US Foods does not indicate when it received Mr. Canton's medical records, but clearly defense counsel was alerted to Mr. Canton's claim of privilege based on privacy rights well before the date of compliance in the subpoenas, such that it was bound by the requirements of Rule 45(e)(2)(B). Because this matter was submitted to the Court for resolution in a timely fashion, see supra Section III.A, and because the parties dispute US Foods' ability to use the medical records in this litigation, the Court rejects US Foods' assertion that the motion to quash is moot and will proceed to resolve Mr. Canton's objections to US Foods' subpoenas pursuant to Rule 45(d)(3)(A) and (e)(2).

    **C.**    **Relevance of Medical Records and Waiver of Privacy Rights by Mr. Canton**

US Foods argues that the Court should deny the motion to quash in its entirety because Mr. Canton's medical records are relevant to: "(1) the scope and extent of Plaintiff's alleged emotional distress he attributes to US Foods; (2) the scope and extent of Plaintiff's economic damages he attributes to emotional distress; and (3) whether there were alternative stressors that

7

1  contributed to Plaintiff's alleged emotional distress." ECF No. 41 at 3. US Foods also argues that
2  Mr. Canton has "placed his mental and physical condition at issue and, therefore, waived the
3  psychotherapist privilege and his privacy rights with respect to his medical records." Id. Finally,
4  US Foods contends that the parties' protective order sufficiently safeguards Mr. Canton's privacy
5  concerns. Id. at 4; see ECF No. 36.

6  Mr. Canton, on the other hand, argues that he has not waived his privacy rights "by
7  asserting more than a garden-variety claim of emotional distress." ECF No. 40 at 3 (quoting
8  E.E.O.C., 237 F.R.D. at 224). Therefore, medical records concerning any physical conditions are
9  irrelevant. Id. In response, US Foods claims that Mr. Canton has put his physical health at issue
10 because in his verified discovery responses, Mr. Canton stated that he was treated by his medical
11 providers for "the onset of gout brought on by stress," and his supplemental disclosures also
12 provide that "Plaintiff has incurred out-of-pocket expenses for treatment he sought for the mental,
13 emotional, and **physical injuries** he claims as a result of Defendant's discriminatory practices."
14 ECF No. 41 at 3. At the hearing, however, Mr. Canton's counsel stated on the record that Mr.
15 Canton does not intend to seek damages from US Foods related to any physical injury or
16 condition.

17 The Court will consider the relevance of each medical provider's records, as well as
18 whether Mr. Canton has waived his privacy rights as to each set of records, in turn.

19 **1.    Damien Terronez, LCSW**

20 Mr. Terronez is a therapist and Mr. Canton sought treatment from him from January 2022
21 to April 2022 for emotional distress. ECF No. 40 at 3. Mr. Canton previously produced to US
22 Foods "Mr. Terronez's complete file," with the exception of a January 15, 2022 intake form which
23 was produced with redactions. Id. Mr. Canton's counsel lodged an unredacted copy of the intake
24 form for *in camera* review. See ECF No. 42. Mr. Canton's counsel also stated on the record at
25 the hearing that Mr. Canton intended to rely on Mr. Terronez's records to prove damages and
26 potentially call Mr. Terronez as a witness in the case.

27 Mr. Canton has undeniably put the contents of Mr. Terronez's records "at issue," a fact
28 which he does not seriously dispute. Anderson, 2014 WL 3725856, at *2. But Mr. Canton

8

nevertheless argues that the three redacted lines on the intake form—his "current medical conditions," "history of medical conditions," and "current medication"—are related to his physical health history and not relevant. ECF No. 40 at 3. However, if Mr. Terronez is to provide testimony as to the emotional distress suffered by Mr. Canton because of US Foods' conduct, then the information that Mr. Canton provided to Mr. Terronez and that was used by him to form his clinical assessment of Mr. Canton is highly probative. Mr. Canton cannot simultaneously rely on Mr. Terronez's records for proof of damages and withhold information within those records because he unilaterally deems that information irrelevant. To the extent Mr. Canton remains concerned about his privacy rights as to the information regarding his physical health, that can be addressed by the parties' stipulated protective order in this case. See Knoll, 2012 WL 4466543, at *2 ("In making [the] determination [of whether to quash the subpoena], the Court also considers whether a protective order will address the asserted privacy concerns.")

The January 15, 2022 intake form should be produced to US Foods in full and with no redactions. In addition, because the parties have indicated that PATH is an entity affiliated with Mr. Terronez, US Foods is entitled to any records produced by PATH with respect to Mr. Terronez's treatment of Mr. Canton.

## 2. Jack Harvey, DPM

Dr. Harvey is Mr. Canton's podiatrist, and Mr. Canton claims to have sought treatment from him after his gout diagnosis at the end of 2021. ECF No. 40 at 3. Mr. Canton states that Dr. Harvey's treatment notes contain "a mere three mentions of this diagnosis, which he attributed to stress (not the other way around)." Id. He also claims that the symptoms of his gout started to decrease as early as January 30, 2022. Id.

Mr. Canton has already disclosed to US Foods in his verified discovery responses that he was diagnosed with gout "brought on by stress" during the relevant time period in this lawsuit. ECF No. 41 at 3. Although he supplemented his discovery responses to remove the reference to his gout diagnosis, and is not seeking damages because of the gout, Mr. Canton's claim is that US Foods' unlawful conduct caused him to suffer "emotional distress, including depression, anxiety, *stress*, sense of worthlessness and helplessness." FAC ¶ 57 (emphasis added). Moreover, Mr.

9

1    Canton already disclosed his gout diagnosis when he produced an unredacted intake form to US
2    Foods.
3        Mr. Canton cannot now "unring the bell." His privacy concerns can be sufficiently
4    safeguarded by the parties' stipulated protective order. See Knoll, 2012 WL 4466543, at *2. US
5    Foods is entitled to explore the relationship, if any, between Mr. Canton's gout diagnosis and his
6    emotional distress he has alleged was caused by US Foods' conduct. See Sedaghatpour v.
7    California, No. C 07-1802 WHA (MEJ), 2007 WL 4259214, at *1 (N.D. Cal. Dec. 3, 2007)
8    (holding that the plaintiff's right to privacy as to her medical records was "outweighed" by the
9    defendants' right to evaluate to what extent her "emotional distress claims and mental anguish are
10   attributable to prior issues, and which are attributable to the present incident.") Therefore, US
11   Foods is entitled to review Dr. Harvey's medical records as to his treatment of Mr. Canton's gout.

### 3.   Michael Alper, M.D.

13   Dr. Alper is Mr. Canton's general practitioner, and according to Mr. Canton, he has been a
14   patient of Dr. Alper's for over 20 years. ECF No. 40 at 3. His visits "encompass annual check-
15   ups, ailments, screening tests, charts, sexual health history, medications, etc." Id. Mr. Canton
16   discussed taking Family Medical Leave Act (FMLA) leave with Dr. Alper for "ongoing stress due
17   to Defendant's conduct," and he has already produced documentation in his possession to US
18   Foods related to his FMLA leave. Id.
19   There is no dispute as to US Foods' right to review Dr. Alper's records relating to his
20   treatment of Mr. Canton's ongoing stress and his stress-related leave. However, the request for all
21   medical records, including "annual check-ups, ailments, screening tests, charts, sexual health
22   history, [and] medications" is clearly overbroad. See Prado v. Equifax Info. Servs. LLC, 331
23   F.R.D. 134, 138 (N.D. Cal. 2019) (holding that the plaintiff's sexual and gynecological medical
24   records were "private and highly sensitive," and not relevant to Equifax's possible defenses as to
25   the parties' credit-reporting dispute). In Prado, the Court rejected Equifax's "generalized
26   speculation that the records might contain discussions of stress and a generalized argument that
27   any stress by Ms. Prado from sources other than Equifax's alleged credit-reporting violations
28   might be relevant to a possible causation defense." Id. at 137. "Allowing any person, other than

the patient or doctor, to view these records is embarrassing and potentially harassing." Id. (citation omitted).

Here, US Foods does not provide the Court with any specific reason as to why Dr. Alper's records may be relevant other than claiming it is "entitled to uncover any other contributing factors" for Mr. Canton's injuries, "as well as any pre-existing conditions or emotional distress." ECF No. 41 at 4. This is simply "generalized speculation" at this point in the litigation. Prado, 331 F.R.D. at 137.

Accordingly, the Court denies US Foods' present request for Dr. Alper's *complete* medical file as to Mr. Canton. The denial is without prejudice as to US Foods' ability to subpoena additional records from Dr. Alper should any future discovery, such as deposition testimony, lead to the need for more discovery in support of its defenses against Mr. Canton's claims.

Because US Foods has already received records from Dr. Alper, it must "destroy the specified information and any copies it has." Fed. R. Civ. P. 45(e)(2)(B). Before doing so, US Foods must serve a copy of the records to Mr. Canton's counsel for their review. Once the records are destroyed, US Foods may re-issue a narrower subpoena seeking only the records maintained by Dr. Alper that are relevant to this action in accordance with this Court's Order.[4]

## IV.   CONCLUSION

Mr. Canton's motion to quash is **GRANTED IN PART** and **DENIED IN PART**. Mr. Canton is ordered to produce to US Foods the complete, unredacted January 15, 2022 intake form in connection with Mr. Terronez's treatment of Mr. Canton within one week from the date of this order.

---

[4] In the Joint Discovery Statement, the parties disagreed over Mr. Canton's "first look" proposal, whereby Mr. Canton's counsel would initially review the medical records if US Foods withdrew its subpoenas and remove any "irrelevant" records before producing to US Foods along with a privilege log. ECF Nos. 35 at 3; 40 at 2. US Foods argued that Mr. Canton had not provided any "legal support" for the proposal. ECF No. 35 at 6. The issue was not further briefed by the parties in their supplemental briefing, likely because US Foods did not withdraw the subpoenas and the medical providers eventually produced the records despite Mr. Canton's objections. Without ruling on the merits of Mr. Canton's "first look" proposal, the Court finds that the better course of action at this point is to require US Foods to revise and reissue a more narrowly tailored subpoena to Dr. Alper, designed to seek limited, relevant, non-protected information.

US Foods is ordered to file with the Court a declaration attesting to having served a copy of the records it received from Dr. Alper to Plaintiff and having destroyed all copies of the records in its possession by within one week from the date of this order. Once that is done, US Foods may re-issue a narrower subpoena to Dr. Alper seeking only the documents maintained by Dr. Alper that are related to his treatment or consultation regarding Mr. Canton's mental health and stress-related conditions, including his gout diagnosis, during the time period January 1, 2018 to the present.

**IT IS SO ORDERED.**

Dated: June 16, 2023

_____
LISA J. CISNEROS
United States Magistrate Judge