UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CANTON,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. FOODS, INC.,<br><br>    Defendant. | Case No. 22-cv-04226-TLT  (LJC)<br><br>**ORDER RE: JOINT STATEMENT OF WRITTEN DISCOVERY DISPUTE RELATED TO REQUESTS FOR PRODUCTION**<br><br>Re: ECF No. 46 |

Before the Court is the parties' Joint Statement of Written Discovery Dispute Related to Requests for Production (Joint Discovery Statement). ECF No. 46. The present dispute relates to written discovery propounded by Plaintiff Brian Canton (Plaintiff or Mr. Canton), specifically, Mr. Canton's Requests for Production (RFP) Nos. 40, 57, and 70. Id. at 2.[1] Having read the parties' submission and carefully considered their arguments and the relevant legal authority, including those presented at the Court's hearing on the dispute on June 30, 2023, the Court **GRANTS IN PART** Mr. Canton's request to compel documents from US Foods in response to the RFPs at issue for the foregoing reasons.

**I.  BACKGROUND**

In a previous order resolving an unrelated discovery dispute, the Court summarized the events giving rise to Mr. Canton's claims and so incorporates that background by reference here. See ECF No. 48 at 1-3. In the interest of brevity, the Court notes that Mr. Canton alleges individual, non-class claims of race-based employment discrimination, retaliation, and constructive discharge, and alleges that US Foods had a pattern and practice of promoting less

---

[1] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system when the document is electronically filed on the court docket.

qualified White employees over its Black employees.

With respect to this discovery dispute, the parties disagree over US Foods' response to Plaintiff's RFP Nos. 40, 57, and 70. Plaintiff's requests are as follows:

> **REQUEST FOR PRODUCTION NO. 40**:
> Any and all DOCUMENTS that reflect the demographic makeup of ALL employees in the Livermore, California facility, including without limitation any EEO-1 reports.
>
> **REQUEST FOR PRODUCTION NO. 57**:
> Any and all DOCUMENTS that reflect the demographic make-up of all senior leadership, including supervisors, managers, and directors, employed by YOU in the past 10 years in the Livermore, California facility, including without limitation any EEO-1 reports.
>
> **REQUEST FOR PRODUCTION NO. 70**:
> Any and all DOCUMENTS that reflect YOUR Affirmative Action plan data, including utilization summary data, since 2004.

ECF No. 46-1 at 9, 11, 13.

In the parties' Joint Discovery Statement, Plaintiff makes a specific demand for US Foods' EEO-1 reports and documents related to Defendant's Affirmative Action policy and utilization data, comparing the demographics of current employees with the demographics of the available workforce. ECF No. 46 at 3 (describing the discovery dispute); see also ECF No. 46-1 at 27-28 (US Foods' declining to produce such information).

All private sector employers with 100 or more employees, and federal contractors with 50 or more employees meeting certain criteria, are required to submit EEO-1 reports containing demographic workforce data, including data by race/ethnicity, sex, and job categories. Id. The data is used by the Federal Government to monitor compliance with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 et seq. See 29 C.F.R. § 1602.1.

Before propounding RFP Nos. 40 and 57, in May of 2022, Mr. Canton filed a Freedom of Information Act (FOIA) Request for EEO-1 reports filed by US Foods in all California locations from January 2004 to the present. Id. The OFCCP denied Mr. Canton's FOIA request based on 5 U.S.C. § 522(b)(4) (Exemption 4), which protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." ECF No. 46-1 at 17-18.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) requires the Court to limit discovery that is unreasonably cumulative or duplicative, that the party seeking discovery has had ample opportunity to obtain, or that is outside the scope of permissible discovery described in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2).

A party may serve requests for documents on any other party so long as the request is within the scope of permissible discovery as defined in Rule 26(b)(1). Fed. R. Civ. P. 34(a). The requests "must describe with reasonable particularity each item or category of items" to be produced. Fed. R. Civ. P. 34(b)(1)(A).

"The party seeking discovery has the initial burden of establishing that its request satisfies Rule 26(b)(1)'s relevancy requirement." Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, No. 16CV00236WHODMR, 2019 WL 311622, at *3 (N.D. Cal. Jan. 24, 2019). "The test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liabl. Litig., 2017 WL 4680242, at *1 (N.D. Cal. Oct 18, 2017) (quoting Fed. R. Evid. 401). On the other hand, the party opposing discovery "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting [his] objections with competent evidence." Sayta v. Martin, No. 16-CV-03775-LB, 2019 WL 666722, at *1 (N.D. Cal. Feb. 19, 2019) (quoting La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

## III. DISCUSSION

### A. Request Nos. 40 and 57

Mr. Canton argues that US Foods' EEO-1 reports are relevant to his allegation that US

3

Foods "engaged in discriminatory patterns or practices in failing to promote him." ECF No. 46 at 3; see also First Amended Complaint (FAC) ¶ 1, ECF No. 21 ("Defendant [US Foods] has a pattern and practice of promoting less qualified Caucasian employees over Black and African-American employees.") According to Mr. Canton, to prove this claim, he must "understand[] the racial makeup of Defendant's Livermore facility to evaluate whether Defendant had a dedicated commitment to its stated Affirmative Action and anti-discrimination policies." ECF No. 46 at 3. He relies in part on Diaz v. Am. Tel. & Tel., 752 F.2d 1356 (9th Cir. 1985), where the Ninth Circuit held that "[s]tatistical evidence is unquestionably relevant in a Title VII disparate treatment case" because "it can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices. Such a discriminatory pattern is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." Id. at 1362–63.

For its part, US Foods argues that the EEO-1 reports are irrelevant to Mr. Canton's contention that he was improperly passed over for a Warehouse Manager position. ECF No. 46 at 5. According to US Foods, statistical data showing an employer's pattern of conduct toward a protected class of employees may be appropriate in class actions, but not with respect to individual discrimination claims. Id. (citing Cooper v. Fed. Res. Bank of Richmond, 467 U.S. 867, 876 (1984)). Therefore, RFP Nos. 40 and 57 are overbroad in that they seek information that will include individuals who are not similarly situated to Mr. Canton in terms of their job positions, departments, etc. Id. at 6. In addition, US Foods argues that Mr. Canton may not "sidestep the OFCCP's determination that disclosure of the requested records was not permitted under FOIA Exemption 4," especially because Mr. Canton did not file a lawsuit to challenge the OFCCP's decision. Id.

US Foods has failed to persuade the Court that the EEO-1 reports are not discoverable because statistical data is irrelevant to Mr. Canton's individual disparate treatment claims. Mr. Canton's individual discrimination claims are premised, in part, on allegations of a pattern-or-practice of discrimination by US Foods in its promotions decisions. Whether Mr. Canton can use "pattern or practice" statistical data ordinarily used in the context of class actions to prove his

4

individual discrimination case is an open question within the Ninth Circuit. See Buchanan v. Tata Consultancy Servs., Ltd., No. 15-CV-01696-YGR, 2018 WL 3537083, at *4 (N.D. Cal. July 23, 2018) ("The Ninth Circuit has not yet explicitly determined whether an individual private plaintiff may bring a claim for discrimination using the Teamsters [pattern and practice] framework"); Herrera v. Serv. Emps. Int'l Union Loc. 87, No. CV 10-01888 RS, 2013 WL 12324535, at *4 (N.D. Cal. Sept. 13, 2013) ("Whether individual plaintiffs can rely on a pattern or practice method of proof is an issue that has not been addressed by the Ninth Circuit.")  But this District has recognized that evidence of a pattern or practice of discrimination may be helpful in making a showing that an individual himself was discriminated against, though statistical evidence of a pattern or practice will not allow individual plaintiffs to avoid alleging or proving that they themselves have suffered discriminatory treatment.  See, e.g., Renati v. Wal-Mart Stores, Inc., No. 19-cv-02525-CRB, 2019 WL 5536206, *6-7 (N.D. Cal. Oct. 25, 2019) (denying motion to dismiss pay discrimination claim).

The Court also finds Obrey v. Johnson, 400 F.3d 691 (9th Cir. 2005) instructive.  There, the plaintiff claimed that he was denied a promotion at the Pearl Harbor Naval Shipyard, and he sued the Secretary of the Navy, alleging that it engaged in a pattern or practice of discriminating against candidates with Asian-Pacific ancestry in favor of White applicants for senior management positions at the Shipyard.  Id. at 693.  The district court excluded statistical evidence presented by the plaintiff regarding hiring practices for senior-level positions at the Shipyard, as well as an expert report that concluded there was no statistical evidence that the hiring process was unbiased with respect to race.  Id. at 693–94.  The record was unclear as to why the district court excluded the evidence, but "presumably its ruling was based on the perceived irrelevance and unreliability of the statistics." Id. at 694.

The Ninth Circuit held that the district court abused its discretion in excluding the statistical evidence in part because the plaintiff specifically alleged that the Navy engaged in a pattern or practice of discriminatory hiring.  Id.  "In a case in which the plaintiff has alleged that his employer has engaged in a 'pattern or practice' of discrimination, '[s]tatistical data is relevant because it can be used to establish a general discriminatory pattern in an employer's hiring or

5

1  promotion practices. Such a discriminatory pattern is probative of motive and can therefore create
2  an inference of discriminatory intent with respect to the individual employment decision at issue.'"
3  Id. (quoting Diaz, 752 F.2d at 1363).

4        Notably, the Ninth Circuit acknowledged that while "[a] statistical study may fall short of
5  proving the plaintiff's case," it may "still remain relevant to the issues in dispute." Id. at 695.
6  Plaintiff's expert's study could be "relevant, and therefore admissible, even if it is not sufficient to
7  establish [his] *prima facie* case or a claim of pretext." Id. "In sum, [the expert opinion] was
8  relevant for what it purported to analyze" and "[w]hile, by itself, this cannot constitute proof that
9  the Navy discriminated" against the plaintiff, "it should have been admitted for whatever probative
10 value it had." Id. at 696–97 (internal citation omitted); see also Heyne v. Caruso, 69 F.3d 1475,
11 1479–80 (9th Cir. 1995) ("[E]vidence of the employer's discriminatory attitude in general is
12 relevant and admissible to prove race discrimination") (citing U.S. Postal Serv. Bd. of Governors
13 v. Aikens, 460 U.S. 711, 716).

14       Here, Mr. Canton has explained the relevancy of the EEO-1 reports requested by RFP Nos.
15 40, 57, and 70. He alleges that US Foods "has a pattern and practice of promoting less qualified
16 male Caucasian employees over its minority workforce." FAC ¶ 1. Statistical data showing the
17 racial breakdown of US Foods' senior manager positions is relevant to show "whether Defendant
18 had a dedicated commitment to its stated Affirmative Action and anti-discrimination policies,"
19 which goes towards motive and intent with respect to the individual hiring decision as to Mr.
20 Canton. ECF No. 46 at 3; see Obrey, 400 F.3d at 694; Diaz, 752 F.2d at 1363. On the other hand,
21 US Foods has not met its burden of explaining how responding to the RFPs would be unduly
22 burdensome. See Sayta, 2019 WL 666722, at *1. In fact, at the hearing, counsel for US Foods
23 conceded that producing the EEO-1 reports would not be burdensome. Instead, it simply argues
24 that the requested data is irrelevant to Mr. Canton's contention that he was improperly passed over
25 for a Warehouse Manager position (ECF No. 46 at 5), but as previously indicated, the information
26 requested by the RFPs could be relevant even if it will not establish by itself Mr. Canton's claim
27 of employment discrimination. See Obrey, 400 F.3d at 696–97.

28       At the hearing, US Foods seemingly backtracked from its argument in the Joint Discovery

1   Statement that the statistical data sought by Plaintiff in the form of the EEO-1 reports is irrelevant
2   to his individual discrimination claim.  Instead, counsel appeared to concede that such statistical
3   data could be relevant to the individual claims but argued that the RFPs are not proportionate to
4   the needs of the case under Rule 26(b)(1) because of the time frame and the breadth of information
5   sought.  US Foods pointed out that the RFPs ask for "[a]ny and all DOCUMENTS".  ECF No. 46-
6   1 at 9, 11, 13.  Nevertheless, Plaintiff has specified the documents at issue in this discovery
7   dispute.  ECF No. 46 at 3.  The Court declines to rule on the discoverability of any other
8   documents or data that were not specified in the Joint Discovery Statement.[2]  To the extent that the
9   parties discussed or previewed at the June 30th hearing, other potential, future disputes related to
10  the discoverability of particular US Foods human resources data, those issues have not been
11  perfected for the Court's resolution as part of the present discovery dispute.  Such discovery
12  requests may give rise to other concerns related to relevance, and especially burden and
13  proportionality, that differ from the documents and data addressed in this order.
14       US Foods also objects that RFP No. 40 has no temporal limit, and RFP No. 57 asks for
15  documents from the past ten years.  The Court noted that evidence of a defendant's acts outside of
16  the statute of limitations may be evidence relevant to a discrimination claim.  See Flores v. City of
17  Westminster, 873 F.3d 739, 754 (9th Cir. 2017) ("Allowing the jury to hear evidence of
18  Defendants' acts outside the statute of limitations was not reversible error.") (citing Nat'l R.R.
19  Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)).  At the hearing, US Foods indicated that it
20  would be amenable to producing EEO-1 reports from the past three years.  The Court finds that,
21  given the absence of any showing of a burden to produce EEO-1 reports that have already been
22  prepared, US Foods shall produce such reports in response to RFP Nos. 40 and 57 going back to

---

[2] US Foods did not provide further argument or legal authority in the parties' Joint Discovery Statement in support of its objections on the grounds of attorney-client privilege and the attorney work product doctrine.  At the hearing, counsel for US Foods clarified that it objected to RFP Nos. 40, 57, and 70 to the extent the request for "[a]ny and all DOCUMENTS" could possibly call for production of privileged information.  However, counsel conceded that the EEO-1 reports and Affirmative Action plan data (which were the only categories of documents briefed by the parties in the Joint Discovery Statement) are not protected by the attorney-client privilege and/or the attorney work product doctrine.  The Court also notes that US Foods has not provided a privilege log for the Court's review.  Therefore, the Court overrules US Foods' objections on these grounds as to the specific discovery dispute being resolved by this Order.

2010.  It has been alleged, and the parties did not dispute at the hearing, that Mr. Canton first applied for and was rejected for a promotion in 2010.  See FAC ¶¶ 18, 25-27.  The Court is not persuaded that EEO-1 reports going back to 2004 is proportional to the needs of this case involving individual claims.  Because there is no indication in the record that senior leadership and manager information is reported separately from employee information in EEO-1 report, the same time period for the production of reports pursuant to RFP Nos. 40 and 57 shall apply.

Finally, the Court is unpersuaded by US Foods' argument that discovery of the EEO-1 reports is barred by the Office of Federal Contract Compliance Programs's (OFCCP) denial of Mr. Canton's Freedom of Information Act (FOIA) request.  ECF No. 46 at 6.  US Foods argues that Plaintiff fails to cite a single case that the OFCCP's FOIA exemption decision is not preclusive.  ECF No. 46 at 5.  Yet, US Foods misapprehends the burden; it bears the burden of showing that relevant discovery should not be allowed, including citing any legal authority that establishes that an agency's FOIA determination precludes discovery of the same information under Rule 26 of the Federal Rules of Civil Procedure.  Sayta, 2019 WL 666722, at *1.  Having considered the OFCCP's decision, the authorities cited therein, and the argument presented by the parties, Mr. Canton is not precluded from seeking discovery from US Foods of the EEO-1 reports it submitted to the OFCCP.  Congress enacted FOIA to address public-disclosure of government records, and it contemplates that government agencies may legitimately keep certain information from the public through specific exemptions to disclosure, Center for Investigative Reporting v. U.S. Department of Labor, 424 F.Supp.3d 771, 776 (N.D. Cal 2019), but it does not resolve what documents are discoverable from a litigant under Rule 26.  Furthermore, Mr. Canton has cited to decisions in this District in which the court has compelled discovery of such reports.  See also, Zamora v. D'Arrigo Bros. Co. of Cal., No. C04-00047JW(HRL), 2007 WL 806518, at *1 (N.D. Cal. Mar. 15, 2007); Wynne v. McCormick & Schmicks's Seafood Restaurants, Inc., No. C06-3153CW(BZ), 2006 WL 3422226, at *2 (N.D. Cal. Nov. 28, 2006)).

### B. Request No. 70

With respect to RFP No. 70, and Plaintiff's specific demand for US Foods' Affirmative Action policy and utilization data, going back to 2004, the parties advance the same arguments as

8

to relevancy and proportionality. However, the Affirmative Action policy and utilization data were not the subject of a FOIA request by Mr. Canton. In addition, at the hearing Mr. Canton's counsel belatedly expressed a willingness to agree to temporally limit RFP No. 70 the period from the present to 2010. Setting aside the FOIA issue, the same reasoning that the Court provided above as to Request Nos. 40 and 57, applies to Request No. 70, and US Foods shall provide the responsive policy and utilization data from 2010 to the present.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** Mr. Canton's request to compel with respect to RFP Nos. 40, 57, and 70. US Foods is ordered to produce, within two weeks from the date of this order, the EEO-1 reports and Affirmative Action policies and utilization data for the time period from 2010 to the present.

**IT IS SO ORDERED.**

Dated: July 5, 2023

LISA J. CISNEROS
United States Magistrate Judge